BOIES, SCHILLER & FLEXNER LLP
DAVID W. SHAPIRO (219265)
KIERAN P. RINGGENBERG (208600)
BEKO O. REBLITZ-RICHARDSON (238027)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
Email:  dshapiro@bsfllp.com
        kringgenberg@bsfllp.com
        brichardson@bsfllp.com

Attorneys for Plaintiffs Geoffrey Baker and
Elizabeth Mullen

ORIGINAL
FILED

2008 AUG 20 P 12: 55

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

3974

GEOFFREY BAKER and ELIZABETH
MULLEN,

Plaintiffs,

v.

ARKANSAS BLUE CROSS AND BLUE
SHIELD, BLUE CROSS AND BLUE
SHIELD OF FLORIDA, INC., BLUE
CROSS AND BLUE SHIELD OF
MASSACHUSETTS, INC., BLUE CROSS
AND BLUE SHIELD OF NORTH
CAROLINA, HEALTHCARE SERVICES
CORPORATION, B.P. INFORMATICS
LCC, MICHAEL BROWN,  PETER
GOLDBACH, MICHAEL NEWMAN,
LAURA TUMPERI, and CHRISTOPHER
WOODFIN,

Defendants.

COMPLAINT; JURY DEMAND

Case No.

SBA

COMPLAINT; JURY DEMAND                    1

1    Plaintiffs Geoffrey Baker and Elizabeth Mullen, by and through their attorneys Boies,

2    Schiller & Flexner LLP, as and for their Complaint, allege as follows:

3    **I.    PRELIMINARY STATEMENT**

4         1.      This is an action by Plaintiffs Geoffrey Baker and Elizabeth Mullen arising from

5    Defendants' ongoing self-dealing, breaches of fiduciary duty, and other unlawful acts in

6    connection with their control over Med-Vantage, Inc. ("Med-Vantage"), a San Francisco-based

7    software company.  Baker founded Med-Vantage, Mullen was an early employee, and both are

8    now minority shareholders.  Plaintiffs seek damages and injunctive relief to prevent Defendants

9    from committing further breaches and harm.

10        2.      Med-Vantage was founded in 2001, focusing on business intelligence solutions

11   for the health care industry.  Baker built Med-Vantage using his family's life savings and more

12   than half a decade of hard work.  Mullen contributed more than two years at Med-Vantage at

13   below-market wages in order to receive equity in the company, as is common at start-up

14   enterprises.  Defendants are five health insurers who took a 52% controlling interest in Med-

15   Vantage, employees of those insurers who serve as five of nine Med-Vantage directors, and an

16   insurer-owned entity that the insurers use to facilitate and coordinate their control of Med-

17   Vantage.

18        3.      Since taking control of Med-Vantage in August 2007, Defendants violated their

19   fiduciary duties by running Med-Vantage for their benefit alone and to the detriment of

20   minority shareholders including Baker and Mullen.  Defendants have turned Med-Vantage

21   from an innovative software firm with demonstrated potential for massive sales growth in

22   several markets to what is, in effect, an in-house information technology department building

23   software designed and customized to meet Defendants' needs rather than achieve widespread

24   marketplace success and increase shareholder value.  As a result, the value of Plaintiffs' Med-

25   Vantage shares has declined precipitously, and they have been prevented from obtaining any

26   value for them.

27        4.      Among other things, Defendants have violated their fiduciary duties of care,

28   loyalty, honesty and good faith by taking the following self-interested actions which benefited

COMPLAINT; JURY DEMAND                    2

1   Defendants at the expense of minority shareholders including Baker and Mullen:

2         a.  Causing Med-Vantage to adopt a budget that expended scarce resources

3              on building and customizing a large number of software applications for

4              Defendants' use, rather than focusing on and selling software in the

5              marketplace;

6         b.  Preventing Med-Vantage management from exploring possible

7              opportunities for additional investment that would provide needed capital

8              and increase shareholder value, despite expressions of interest by

9              professional investors, because other outside investments might affect

10            Defendants' control over Med-Vantage and their ability to siphon its

11            value to themselves;

12        c.  Preventing Med-Vantage management from collecting amounts owed by

13           certain Defendants to Med-Vantage for software and services provided;

14        d.  Causing Med-Vantage to set prices below market rates, to obtain Med-

15           Vantage software for themselves cheaply despite the negative impact on

16           Med-Vantage's revenues, and requiring Med-Vantage to agree to

17           disadvantageous terms in its sales contracts with Defendants;

18        e.  Preventing Med-Vantage from pursuing opportunities to sell its products

19           in new markets, such as employers and consumers, rather than insurers,

20           because such sales would have competed against the insurers and

21           possibly reduced the value of Defendants' other investments; and

22        f.  Requiring Med-Vantage to grant valuable rights relating to source code

23           to one Defendant in exchange for benefits provided not to Med-Vantage

24           but to the other Defendants.

25   **II.**    **THE PARTIES**

26      5.    Baker is a resident of San Francisco, California and a citizen of the state of

27   California.  Baker owns Med-Vantage shares.

28      6.    Mullen is a resident of San Francisco, California and a citizen of the state of

1 | California.  Mullen owns Med-Vantage shares.

2 | 7. Defendant Arkansas Blue Cross and Blue Shield ("BCBS Arkansas") is an

3 | Arkansas corporation with its principal place of business in Little Rock, Arkansas.

4 | 8. Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBS Florida") is a

5 | Florida corporation with its principal place of business in Jacksonville, Florida.

6 | 9. Defendant Blue Cross and Blue Shield of Massachusetts, Inc.  ("BCBS

7 | Massachusetts") is a Massachusetts corporation with its principal place of business in Boston,

8 | Massachusetts.

9 | 10. Defendant Blue Cross and Blue Shield of North Carolina ("BCBS North

10 | Carolina") is a North Carolina corporation with its principal place of business in North Chapel

11 | Hill, North Carolina.

12 | 11. Defendant Healthcare Services Corporation ("HCSC") is a Delaware

13 | corporation with its principal place of business in Chicago, Illinois.

14 | 12. Defendant B.P. Informatics, LCC ("BPI") is a Delaware limited liability

15 | company with its principal place of business in Durham, North Carolina.  At all relevant times,

16 | defendants BCBS Florida, BCBS Massachusetts, BCBS North Carolina, and BCBS Arkansas

17 | (and, since at least December 2007, defendant HCSC) have owned a controlling interest in BPI,

18 | either directly or through wholly-owned subsidiaries.  No member of BPI is incorporated in

19 | California, no member of BPI has its principal place of business in California, and no member

20 | of BPI resides in California.

21 | 13. Defendant Michael Brown is a resident and citizen of Arkansas.  Since at least

22 | August 22, 2007, Brown has been a senior executive of BCBS Arkansas, Chairman of the

23 | board of directors of Med-Vantage, and Chairman of the member committee of BPI.  Brown is

24 | currently Chief Operating Officer of BCBS Arkansas.

25 | 14. Defendant Peter Goldbach is a resident and citizen of Massachusetts.  Since at

26 | least August 22, 2007, Goldbach has been Medical Director and Vice President of BCBS

27 | Massachusetts and a director of Med-Vantage.  Goldbach is also now the acting CEO of Med-

28 | Vantage.

COMPLAINT; JURY DEMAND                                    4

1       15.    Defendant Michael Newman is a resident and citizen of Florida.  Since at least

2   August 22, 2007, Newman has been Vice President, Medical Informatics of BCBS Florida and

3   a director of Med-Vantage.

4       16.    Defendant Laura Tumperi is a resident and citizen of Illinois.  Since at least

5   January 25, 2008, Tumperi has been Vice President, Subscriber Service Division of HCSC and

6   a director of Med-Vantage.

7       17.    Defendant Christopher Woodfin is a resident and citizen of North Carolina.

8   Since at least November 2007, Woodfin has been Vice President and Chief Risk Officer of

9   BCBS North Carolina and a director of Med-Vantage.

10  **II.    JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

11      18.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  There is

12  complete diversity of citizenship because Plaintiffs are residents of California, and no

13  Defendant is resident of the State of California for purposes of diversity pursuant to 28 U.S.C.

14  § 1332(c)(1).  The damages of each plaintiff, and thus the amount in controversy, exceed

15  $75,000, exclusive of costs and interest.

16      19.    This Court has personal jurisdiction over all Defendants because Plaintiffs'

17  claims arise from each of Defendants transacting business in the State of California, causing

18  tortious injury by an act or omission in the State of California, and/or causing tortious injury in

19  the State of California by an act or omission outside of the State of California, including but not

20  limited to their investment in Med-Vantage, their control over Med-Vantage, their service as

21  directors of Med-Vantage, and their intentional injury of Plaintiffs.  The headquarters and

22  principal place of business of Med-Vantage has, at all times, been in San Francisco, California.

23      20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a

24  substantive part of the events or omissions giving rise to the claim occurred in this district.

25      21.    This case is properly assigned to the San Francisco Division or Oakland

26  Division because the claims arise in San Francisco, California, where Plaintiffs reside and

27  where Med-Vantage has its principal place of business.

28

### III.  MED-VANTAGE

22.  Plaintiff Geoffrey Baker founded Med-Vantage in 2001.  Between 2001 and 2007, Baker poured his family's life savings and years of unpaid and underpaid work into building Med-Vantage into a successful software company.  In 2005, Baker sold his family's home and invested the proceeds in Med-Vantage.

23.  Plaintiff Elizabeth Mullen worked for Med-Vantage from April 2005 to June 2007.  As part of her compensation, she received stock options, which she exercised to obtain Med-Vantage shares.

24.  By August 2007, Med-Vantage had grown to be a leader in designing and providing health care business intelligence solutions.  Among other things, Med-Vantage's products used sophisticated and innovative approaches to gather and analyze data to permit health plans to evaluate providers based on their performance and to provide consumer healthcare shopping tools.  Med-Vantage had great potential to capitalize on an unmet market opportunity.

25.  By August 2007, Med-Vantage had grown to more than 40 employees, earned relationships with several major clients including Cigna, and achieved impressive and rapidly-growing revenues.  Med-Vantage had also filed two patent applications.

26.  In 2007, Defendants BCBS Arkansas, BCBS Florida, BCBS North Carolina, and BCBS Massachusetts, by and through BPI, conducted nine months of exhaustive due diligence of a potential investment in Med-Vantage.  The result of that due diligence was that BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, and BPI were impressed by the quality and value of Med-Vantage's intellectual property portfolio, its high-quality engineering team, its strong leadership, and the market potential of its products.

### IV.  DEFENDANTS GAIN CONTROL OF MED-VANTAGE

27.  On or about August 21, 2007, Med-Vantage was re-incorporated as a Delaware corporation.

28.  On or about August 22, 2007, Defendants BCBS Arkansas, BCBS Florida, BCBS North Carolina, and BCBS Massachusetts, through their ownership and control of BPI,

1  purchased 52% of the outstanding shares of Med-Vantage. This transaction left Baker with

2  approximately 31% of the outstanding shares of Med-Vantage on a fully-diluted basis, with the

3  remaining shares owned by Med-Vantage employees, directors, and advisors who had received

4  options or shares as part of their compensation, such as Mullen.

5        29.    On or about August 22, 2007, Defendants BCBS Arkansas, BCBS Florida,

6  BCBS North Carolina, and BCBS Massachusetts, through their ownership and control of BPI,

7  nominated as directors of Med-Vantage their respective employees Michael Brown, Michael

8  Newman, Ron Smith, and Peter Goldbach.

9        30.    Michael Brown, Peter Goldbach, Michael Newman, and Ron Smith became

10  Med-Vantage directors on or about August 22, 2007.

11        31.    Starting on or about August 22, 2007 and through approximately November

12  2007, Michael Brown, Peter Goldbach, Michael Newman, and Ron Smith constituted a

13  majority of the board of directors of Med-Vantage.

14        32.    In or about November 2007, Defendant BCBS North Carolina chose to replace

15  Ron Smith as a Med-Vantage director with Christopher Woodfin. Woodfin became a director

16  of Med-Vantage in or about November 2007.

17        33.    Starting in or about November 2007 through January 25, 2008, directors

18  Michael Brown, Peter Goldbach, Michael Newman, and Christopher Woodfin constituted a

19  majority of the board of directors of Med-Vantage.

20        34.    Starting on or about August 22, 2007 and through January 25, 2008, Defendants

21  BCBS Arkansas, BCBS Florida, BCBS North Carolina, amd BCBS Massachusetts controlled

22  Med-Vantage, by and through their ownership and control of BPI, by and through their

23  ownership of a majority of Med-Vantage stock, and by virtue of their employees constituting a

24  majority of the board of directors of Med-Vantage.

25        35.    In or about December 2007, HCSC took an ownership interest in BPI, either

26  directly or through a wholly-owned subsidiary.

27        36.    On or about January 25, 2008, HCSC, by and through its control of BPI,

28  nominated Laura Tumperi as a director of Med-Vantage. Tumperi became a director of Med-

COMPLAINT; JURY DEMAND        7

1    Vantage on or about January 25, 2008.

2        37.    Beginning on or about January 25, 2008 and continuing to present, Michael

3    Brown, Peter Goldbach, Michael Newman, Laura Tumperi, and Christopher Woodfin

4    constituted a majority of the board of directors of Med-Vantage.

5        38.    Beginning on or about January 25, 2008 and continuing to present, BCBS

6    Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, and HCSC, controlled

7    Med-Vantage by and through their ownership and control of BPI, by and through their

8    ownership of a majority of Med-Vantage stock, and by virtue of their employees constituting a

9    majority of the board of directors of Med-Vantage.

10        39.    Since taking control of Med-Vantage, Defendants have acted jointly and for a

11    common purpose with regard to their operation of Med-Vantage.  Defendants Michael Brown,

12    Peter Goldbach, Michael Newman, Laura Tumperi, and Christopher Woodfin have nearly

13    always voted together as a block on Med-Vantage board matters.  Michael Brown and other

14    Defendant-affiliated directors met as the Executive Committee of the Med-Vantage board and

15    discussed and reached agreement about Med-Vantage matters, without any involvement of

16    directors not affiliated with Defendants.  In addition, these and other executives from BCBS

17    Arkansas, BCBS Florida, BCBS North Carolina, and BCBS Massachusetts (and HCSC, after it

18    became a member of BPI) have repeatedly met, conversed, and corresponded separately to plan

19    and reach consensus about their planned actions with regard to Med-Vantage, including

20    through BPI member committee meetings.

21        40.    Each of the Defendants had actual knowledge of, participated in, provided

22    substantial assistance with respect to, and ratified each breach of fiduciary duty and other

23    wrongful acts by each of the other Defendants, and they each did so for their own financial

24    benefit.  Each of the Defendants agreed and conspired with the other Defendants to maintain

25    control of Med-Vantage and exploit Med-Vantage to further their interests to the detriment of

26    minority shareholders like Baker and Mullen, and committed the acts alleged herein in

27    furtherance of that agreement and conspiracy.

28

V.    **DEFENDANTS OPERATE MED-VANTAGE TO THEIR BENEFIT AND TO THE DETRIMENT OF MINORITY SHAREHOLDERS**

A.    **Budget and Product Roadmap**

41.    After taking control of Med-Vantage, Defendants imposed on Med-Vantage a product roadmap that required Med-Vantage to develop and/or significantly enhance six different applications in a year, over the objections of Med-Vantage management and directors not affiliated with Defendants.

42.    Defendants' insistence on a six-product roadmap benefited them at the expense of minority shareholders including Baker and Mullen.  Defendants aimed to have a broad array of software they desired to have available to them for their own benefit instead of building a smaller number of products that could be developed in a commercially viable, focused manner and made ready for widespread market sales.

43.    Defendants' insistence on a six-product roadmap also required dedication of resources to that effort and so prevented Med-Vantage from making necessary investments in marketing and sales, including not hiring sufficient sales and marketing staff.  This benefited Defendants, who desired software for their own use, to the detriment of minority shareholders, who would have benefited had the company increased sales to others, and it benefited Defendants because it reduced competitors' access to Med-Vantage products.

44.    Defendants compounded this injury by requiring Med-Vantage to expend scarce resources customizing software applications for their own use and for their own benefit rather than focusing on making products with widespread appeal in the marketplace.

45.    Defendants also imposed on Med-Vantage a budget to support the six-product roadmap that required a large number of employees and other expenses, resulting in Med-Vantage spending its capital at an unsustainable rate.  Such expenditures benefited Defendants at the expense of minority shareholders by focusing on software development desired by Defendants and leaving Med-Vantage cash-starved and a less attractive investment.

46.    As a result of the Defendant-imposed product roadmap and budget, as well as Defendants' other misconduct, Med-Vantage's expenses greatly exceeded its cash collections

1   and, by the end of the first quarter of 2008, Med-Vantage had nearly depleted its capital.

2   Nonetheless, Defendants prevented Med-Vantage management from taking action to reduce

3   and focus expenditures and conserve resources. This benefited Defendants, who desired

4   software and services for their own use, and harmed minority shareholders, because the

5   company's compromised financial position significantly reduced the appeal of the company to

6   other investors and made minority shareholders' shares less valuable.

7   **B.      Preventing Collection of Amounts Owed by Defendants**

8       47.     By March 2008, BCBS Arkansas and BCBS Massachusetts each had incurred

9   obligations to Med-Vantage in excess of $100,000 for software licenses and services rendered.

10      48.     Defendants used their power as controlling shareholders and directors to delay

11  and prevent Med-Vantage from collecting on these payments, and to attempt to reduce the

12  amounts owed to Med-Vantage, including by threatening Med-Vantage management and

13  directing them not to seek payment on those accounts, despite the objections of Med-Vantage

14  management and directors not affiliated with Defendants.

15      49.     Defendants' use of their positions as owners and directors to prevent Med-

16  Vantage from collecting debts benefited them at the expense of minority shareholders like

17  Baker and Mullen. Defendants BCBS Arkansas and BCBS Massachusetts were able to delay

18  or prevent paying for software and other services, and thus keep the use of their funds, while

19  Med-Vantage was in need of cash.

20  **C.      Preventing Investment by Others**

21      50.     Defendants prevented management from successfully engaging outside investors

22  on possible transactions that would have provided needed capital for Med-Vantage and

23  otherwise significantly increased the value of Med-Vantage shares, over the objections of Med-

24  Vantage management and directors not affiliated with Defendants.

25      51.     Med-Vantage management learned that at least two venture capital firms

26  expressed interest in investing in Med-Vantage. Rather than investigating and considering

27  potential opportunities, Defendants ordered Med-Vantage management to avoid any

28  engagement with these potential investors, and to not begin conversations with any other

COMPLAINT; JURY DEMAND                          10

1    potential investors, so that Defendants would not lose control of Med-Vantage.

2        52.    Defendants' insistence that there be no discussion with possible outside

3    investors benefited Defendants and harmed minority shareholders like Baker and Mullen.  An

4    outside investor would have provided needed capital to Med-Vantage and likely would have

5    brought other important benefits, such as relationships with other firms in the industry and new

6    sales markets for Med-Vantage including  employers and consumers, and thus would have

7    significantly increased the value of Med-Vantage shares, and also would have helped create a

8    market for those shares.  Defendants' refusal to permit Med-Vantage management to consider

9    outside investment protected Defendants' absolute control over Med-Vantage by maintaining

10   their 52% ownership interest and control of a majority of the Med-Vantage board of directors.

11   Defendants thus also protected their continued ability to run Med-Vantage for their benefit and

12   to siphon the value of Med-Vantage to themselves at the expense of minority shareholders.

13                    **D.    Pricing and Non-Price Terms**

14       53.    Defendants forced Med-Vantage to set below market prices for its software

15   products and services, over the objections of Med-Vantage management.  Defendants' pricing

16   decisions benefited themselves at the expense of minority shareholders like Baker and Mullen.

17   Low prices allowed Defendants to obtain Med-Vantage software at reduced expense, but

18   deprived Med-Vantage of revenues that would have provided needed cash and increased the

19   appeal of Med-Vantage to investors.

20       54.    Defendants also required Med-Vantage to agree to onerous, non-standard terms

21   in its license and service contracts with BCBS Arkansas, BCBS Florida, BCBS North Carolina,

22   and BCBS Massachusetts.  In some instances, Defendants obtained these favorable terms in

23   agreements by installing their own employees in positions at Med-Vantage, and then using

24   those employees to give Defendants favorable terms.  For example, employees from BCBS

25   Florida and BCBS Massachusetts – ostensibly acting on behalf of Med-Vantage – negotiated

26   agreements and pricing terms between Med-Vantage and their employers.  These terms

27   benefited Defendants, by giving them superior rights as customers, to the detriment of minority

28   shareholders including Baker and Mullen.

COMPLAINT; JURY DEMAND                    11

**E.     Licensing HCSC to Secure HCSC's Membership in BPI**

55.     To induce HCSC to take an ownership interest in BPI, Defendants BCBS Arkansas, BCBS Florida, BCBS North Carolina, and BCBS Massachusetts, through Med-Vantage Chairman and BCBS Arkansas employee Michael Brown, required Med-Vantage to provide HCSC with valuable rights relating to Med-Vantage source code, over the objections of Med-Vantage management.

56.     Requiring Med-Vantage to provide valuable rights to HCSC relating to Med-Vantage's source code benefited Defendants at the expense of minority shareholders like Baker and Mullen.  HCSC paid each of BCBS Arkansas, BCBS Florida, BCBS North Carolina, and BCBS Massachusetts, either directly or by making payment to BPI, in exchange for its ownership interest in BPI.  None of the minority shareholders of Med-Vantage, including Baker and Mullen, received any value for those payments or for the rights conferred on HCSC.

**F.     Shifting Corporate Opportunities**

57.     Defendants prevented Med-Vantage from pursuing opportunities to expand into additional markets, such as using existing products as a platform to serve employers, providers and consumers rather than sole reliance on health insurers.  Such efforts offered significant benefit to Med-Vantage and its shareholders, including revenue opportunities and investor appeal.

58.     Despite objections from Med-Vantage management and directors not affiliated with Defendants, however, Defendants opposed and prevented Med-Vantage from pursuing these opportunities based on their own self-interest.  Defendants caused Med-Vantage to avoid efforts to compete in new markets, which would have traded-off with efforts to build and customize software for Defendants' benefit, and which would have made Med-Vantage a competitor to Defendants in providing software and services to employers, who are crucial customers of health insurers.  Moreover, Med-Vantage efforts to sell to the employer market would have competed with sales by at least one other company in which Defendants invested, Intelimedix, a healthcare information technology company that BPI acquired, and Defendants therefore sought to protect Intelimedix and Defendants' other investments from competition

1   from, and to the detriment of, Med-Vantage.

2          **G.**    **Seizure and Copying of Source Code**

3        59.    On information and belief, Defendants have used their control over Med-

4   Vantage to obtain, for their benefit and use, a copy of valuable Med-Vantage source code.

5   Defendants do not have rights to possess or use this source code.

6        60.    On information and belief, Defendants have used or will use the source code

7   obtained from Med-Vantage in order to avoid paying full market value for Med-Vantage

8   licensing fees, maintenance fees, or other fees.

9        61.    Defendants' obtaining and using source code improperly obtained from Med-

10  Vantage has or will injure minority shareholders by, among other things, reducing payments to

11  Med-Vantage and reducing the value of Med-Vantage's intellectual property portfolio and its

12  appeal to investors and other acquirers.

13         **H.**    **Impact on Minority Shareholders**

14       62.    As a result of Defendants' conduct, the minority shareholders of Med-Vantage

15  have lost any realistic possibility of selling their Med-Vantage shares for value to any buyer.

16  But for Defendants' conduct, Med-Vantage shares would have substantial value.  However,

17  Defendants' breaches of fiduciary duty and other misconduct, including the successful blocking

18  of any investment by venture capital funds or any other professional investor, has reduced or

19  eliminated the value that existed before Defendants acquired control of Med-Vantage and

20  eliminated any prospect of a transaction that would create an opportunity for minority

21  shareholders to sell their shares to anyone other than Defendants.  As a result, Defendants have

22  effectively frozen-out Plaintiffs and other minority shareholders, preventing them from

23  obtaining any value for their shares, while Defendants use Med-Vantage to build software to

24  serve their needs.

25                          **COUNT I**

26        **(Breach of Fiduciary Duty) (Against all Defendants)**

27       63.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

28  herein.

64.     Defendants Michael Brown, Peter Goldbach, Michael Newman, Laura Tumperi, and Christopher Woodfin, as well as Ron Smith, as directors of Med-Vantage, owed Med-Vantage shareholders including Baker and Mullen fiduciary duties of care, loyalty, good faith, and honesty.  Defendants Brown, Goldbach, Newman, Tumperi, and Woodfin, as well as Smith, while serving as directors of Med-Vantage, were acting as agents and co-conspirators and on behalf of BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, HCSC, and BPI.

65.     Defendants BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, HCSC, and BPI, as controlling shareholders, owed Med-Vantage shareholders including Baker and Mullen fiduciary duties of care, loyalty, good faith, and honesty.

66.     Defendants breached their fiduciary duties, through the acts and omissions described above, including but not limited to:

      a.  Imposing a product roadmap and budget that expended Med-Vantage's available resources at an unsustainable rate to build and customize software for Defendants' use;

      b.  Preventing Med-Vantage management from collecting amounts owed by certain Defendants for the benefit of those Defendants and the other Defendants;

      c.  Blocking Med-Vantage management from pursuing, and by refusing to even consider, possible outside investment so that they could retain control of Med-Vantage for their own benefit;

      d.  Causing Med-Vantage to set prices below what the market would bear, to obtain Med-Vantage software for themselves cheaply despite the negative impact on Med-Vantage's revenues, and by requiring Med-Vantage to agree to onerous non-standard terms in agreements with Defendants;

      e.  Preventing Med-Vantage from pursuing valuable market opportunities, such as software sales to employers and consumers, to avoid competition

1     with Defendants and their investments; and

2     f.   Requiring Med-Vantage to grant valuable rights relating to source code

3     to HCSC without receiving adequate compensation so that HCSC would

4     become take an ownership interest in BPI and provide equity and/or

5     payments to the other Defendants.

6     67.    These actions were undertaken and approved by self-interested directors and

7     those controlling them, without any approval by disinterested directors, an independent

8     committee, or disinterested stockholders, and benefited Defendants to the detriment of minority

9     shareholders including Baker and Mullen.

10     68.    The actions described above were not fair, were undertaken in subjective bad

11     faith, and were motivated by an intent to benefit Defendants at the expense of minority

12     shareholders.  This includes consolidation and entrenchment of control over Med-Vantage and

13     siphoning the economic value of Med-Vantage to Defendants and away from minority

14     shareholders including Baker and Mullen.

15     69.    Each of the Defendants had actual knowledge of, participated in, provided

16     substantial assistance with respect to, and ratified each breach of fiduciary duty by each of the

17     other Defendants, and each obtained a financial benefit as a result.  Each of the Defendants

18     aided and abetted and conspired to undertake the others' breaches of fiduciary duty by, among

19     other things, voting in support of their actions, communicating their support to other

20     Defendants and to Med-Vantage management, failing to object to, or establish an independent

21     committee of the board of directors to correct, the breaches, and failing to remove any of the

22     Defendants as a director of Med-Vantage.

23     70.    Defendants' acts and omissions described above proximately injured Baker and

24     Mullen by, among other things, reducing the value of Med-Vantage shares they own and by

25     eliminating the possibility of a sale of their Med-Vantage shares for value.

26     71.    Defendants' acts and omissions described above were malicious and were

27     intended to injure Baker and Mullen.

28     72.    Baker and Mullen are entitled to damages, punitive damages, and injunctive

1   relief.

2                                    **COUNT II**

3                   **(Minority Shareholder Oppression) (Against all Defendants)**

4          73.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

5   herein.

6          74.     Defendants have controlled Med-Vantage by owning a 52% interest in Med-

7   Vantage and by comprising (and having the power to appoint) a majority of the board of

8   directors of Med-Vantage.

9          75.     Defendants' acts and omissions described above violated the reasonable

10  expectations of minority shareholders including Baker and Mullen, and constituted

11  burdensome, harsh, and wrongful conduct demonstrating a lack of probity and fair dealing in

12  the affairs of Med-Vantage to the prejudice of minority shareholders including Baker and

13  Mullen.

14         76.     Defendants' acts and omissions described above proximately injured Baker and

15  Mullen by, among other things, reducing the value of Med-Vantage shares they own and by

16  eliminating the possibility of a sale for their Med-Vantage shares for value.

17         77.     Defendants' acts and omissions described above were malicious and were

18  intended to injure Baker and Mullen.

19         78.     Baker and Mullen are entitled to damages, punitive damages, and injunctive

20  relief.

21                                   **COUNT III**

22                  **(Violation of Unfair Competition Law) (Against all Defendants)**

23         79.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

24  herein.

25         80.     Defendants have engaged in, and continue to engage in, acts or practices that

26  constitute unfair competition, as that term is defined in Section 17200 of the California

27  Business and Professions Code.  Such acts and practices include the conduct described above,

28  which comprised an unlawful and deceptive scheme to maintain control over Med-Vantage by

COMPLAINT; JURY DEMAND                        16

1  conspiring to obtain control of Med-Vantage with the intent to commit the acts and omissions

2  described above, to prevent fair and honest competition for the purchase of the Med-Vantage

3  shares, to extract value from Med-Vantage for Defendants' benefit and at the expense of

4  minority shareholders, and to prevent minority shareholders from obtaining the best and highest

5  price for their share holdings.

6       81.     Defendants' conduct is "unfair" under California Business and Professions Code

7  § 17200 because, among other things, it offends established public policy and/or is immoral,

8  unethical, oppressive, unscrupulous, and injurious to minority shareholders.

9       82.     Defendants' conduct is "unlawful" under California Business and Professions

10  Code § 17200 because, among other things, it violates fiduciary duties established by law.

11       83.     Defendants' conduct has injured Baker and Mullen in fact by reducing the value

12  of their Med-Vantage shares and by preventing opportunities for Baker and Mullen to sell those

13  shares for value.

14       84.     Baker and Mullen are entitled to restitution and injunctive relief.

15  **PRAYER FOR RELIEF**

16  Plaintiffs Geoffrey Baker and Elizabeth Mullen pray for judgment against Defendants

17  as follows:

18       1.     The Court enter a judgment against Defendants declaring that

19            a.   Defendants have violated their fiduciary duties of care, loyalty, good

20               faith, and honesty;

21            b.   Defendants have oppressed minority shareholders including Plaintiffs;

22            c.   Defendants have violated California Business & Professions Code §

23               17200.

24       2.     The Court issue a permanent injunction prohibiting Defendants and all those in

25  active concert or participation with them from any further violation of their fiduciary duties,

26  from further oppression of minority shareholders, and from further violations of California

27  Business & Professions Code § 17200.

28       3.     The Court order the Defendants, jointly and severally, to pay Plaintiffs'

COMPLAINT; JURY DEMAND          17

1  damages, including pre-judgment interest.

2       4.      The Court order Defendants to pay restitution.

3       5.      On account of Defendants' malicious conduct, the Court order Defendants to

4  pay punitive damages.

5       6.      The Court order Defendants to pay Plaintiffs' costs of prosecuting this action,

6  including reasonable attorneys' fees.

7       7.      The Court award any additional relief as is just and proper.

8  **VII.    JURY DEMAND**

9  Plaintiffs requests a trial by jury on all issues triable by jury.

10

11  Dated:  August 20, 2008                    Respectfully submitted,

12                                             **BOIES, SCHILLER & FLEXNER LLP**

13

14                        By:

15                                             DAVID W. SHAPIRO (219265)
                                               KIERAN P. RINGGENBERG (208600)
16                                             BEKO O. REBLITZ-RICHARDSON (238027)
                                               1999 Harrison Street, Suite 900
17                                             Oakland, CA 94612
                                               Telephone: (510) 874-1000
18                                             Facsimile: (510) 874-1460
                                               Email:  dshapiro@bsfllp.com
19                                                      kringgenberg@bsfllp.com
                                                        brichardson@bsfllp.com
20

21                                             *Attorneys for Plaintiffs Geoffrey Baker and*
                                               *Elizabeth Mullen*
22

23

24

25

26

27

28