BOIES, SCHILLER & FLEXNER LLP
DAVID W. SHAPIRO (219265)
KIERAN P. RINGGENBERG (208600)
BEKO O. REBLITZ-RICHARDSON (238027)
1999 Harrison Street, Suite 900
Oakland, CA 94612
Telephone: (510) 874-1000
Facsimile: (510) 874-1460
Email:  dshapiro@bsfllp.com
          kringgenberg@bsfllp.com
          brichardson@bsfllp.com

Attorneys for Plaintiffs Geoffrey Baker and
Elizabeth Mullen

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEOFFREY BAKER and ELIZABETH MULLEN,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARKANSAS BLUE CROSS AND BLUE SHIELD, BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, HEALTH CARE SERVICE CORPORATION, B.P. INFORMATICS LLC, MICHAEL BROWN, PETER GOLDBACH, MICHAEL NEWMAN, BRETT PAINCHAUD, LAURA TUMPERI, and CHRISTOPHER WOODFIN,**<br><br>Defendants. | **FIRST AMENDED COMPLAINT; JURY DEMAND**<br><br>Case No. 08-3974 (SBA) (EDL)<br><br>Hon. Sandra B. Armstrong<br>Courtroom 3, 3rd Floor |

1    Plaintiffs Geoffrey Baker and Elizabeth Mullen, by and through their attorneys Boies,

2    Schiller & Flexner LLP, as and for their First Amended Complaint, allege as follows:

3    **I.    PRELIMINARY STATEMENT**

4    1.    This is an action by Plaintiffs Geoffrey Baker and Elizabeth Mullen arising from

5    Defendants' ongoing self-dealing, breaches of fiduciary duty, breaches of contract, and other

6    unlawful acts in connection with their control over Med-Vantage, Inc. ("Med-Vantage"), a San

7    Francisco-based software company.  Baker founded Med-Vantage, Mullen was an early

8    employee, and both are now minority shareholders.  Plaintiffs seek damages and injunctive

9    relief to prevent Defendants from committing further breaches and harm.

10    2.    Med-Vantage was founded in 2001, focusing on business intelligence solutions

11    for the health care industry.  Baker built Med-Vantage using his life's savings and more than

12    half a decade of hard work.  Mullen contributed more than two years at Med-Vantage at below-

13    market wages in order to receive equity in the company, as is common at start-up enterprises.

14    Defendants are five health insurers who took a 52% controlling interest in Med-Vantage,

15    employees of those insurers who do serve or did serve as five of the nine Med-Vantage

16    directors, and an insurer-owned entity that the insurers use to facilitate and coordinate their

17    control of Med-Vantage.

18    3.    Since taking control of Med-Vantage in August 2007, Defendants violated their

19    fiduciary duties by running Med-Vantage for their benefit alone and to the detriment of

20    minority shareholders including Baker and Mullen.  Defendants have turned Med-Vantage

21    from an innovative software firm with demonstrated potential for massive sales growth in

22    several markets to what is, in effect, an in-house information technology department building

23    software designed and customized to meet Defendants' needs rather than achieve widespread

24    marketplace success and increase shareholder value.  As a result, the value of Plaintiffs' Med-

25    Vantage shares has declined precipitously, and they have been prevented from obtaining any

26    value for them.

27    4.    Among other things, Defendants have violated their fiduciary duties of care,

28    loyalty, honesty, and good faith and have thereby put Med-Vantage on the brink of financial

FIRST AMENDED COMPLAINT            2

1   ruin for their own selfish reasons by taking the following self-interested actions which

2   benefited Defendants at the expense of minority shareholders including Baker and Mullen:

3       a.  Causing Med-Vantage to adopt a budget that expended scarce resources

4           on building and customizing a large number of software applications for

5           Defendants' use, rather than focusing on and selling software in the

6           marketplace;

7       b.  Preventing Med-Vantage management from exploring possible

8           opportunities for additional investment that would provide needed capital

9           and increase shareholder value, despite expressions of interest by

10          professional investors, because other outside investments might affect

11          Defendants' control over Med-Vantage and their ability to siphon-off its

12          value to themselves;

13      c.  Preventing Med-Vantage management from collecting amounts owed by

14          certain Defendants to Med-Vantage for software and services provided;

15      d.  Causing Med-Vantage to set prices below market rates, to obtain Med-

16          Vantage software for themselves cheaply despite the negative impact on

17          Med-Vantage's revenues, and requiring Med-Vantage to agree to

18          disadvantageous terms in its sales contracts with Defendants;

19      e.  Preventing Med-Vantage from pursuing opportunities to sell its products

20          in new markets, such as for employers and consumers, rather than

21          insurers, because such sales would have competed against the insurers

22          and possibly reduced the value of Defendants' other investments;

23      f.  Requiring Med-Vantage to grant valuable rights relating to source code

24          to one Defendant in exchange for benefits provided not to Med-Vantage

25          but to the other Defendants;

26      g.  Forcing Med-Vantage into insolvency which, combined with conduct

27          preventing any outside investment, leaves Med-Vantage in a position

28          where it may be necessary to accept a loan from one or more of the

FIRST AMENDED COMPLAINT          3

1   Defendants on terms that will extract virtually all remaining value from

2   the company and dilute the holdings of minority shareholders including

3   Plaintiffs.

4   **II.      THE PARTIES**

5   5.      Baker is a resident of San Francisco, California.  Baker owns Med-Vantage

6   shares.

7   6.      Mullen is a resident of San Francisco, California.  Mullen owns Med-Vantage

8   shares.

9   7.      Defendant Arkansas Blue Cross and Blue Shield ("BCBS Arkansas") is an

10   Arkansas corporation with its principal place of business in Little Rock, Arkansas.

11   8.      Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBS Florida") is a

12   Florida corporation with its principal place of business in Jacksonville, Florida.

13   9.      Defendant Blue Cross and Blue Shield of Massachusetts, Inc.  ("BCBS

14   Massachusetts") is a Massachusetts corporation with its principal place of business in Boston,

15   Massachusetts.

16   10.     Defendant Blue Cross and Blue Shield of North Carolina ("BCBS North

17   Carolina") is a North Carolina corporation with its principal place of business in North Chapel

18   Hill, North Carolina.

19   11.     Defendant Healthcare Services Corporation ("HCSC") is an Illinois corporation

20   with its principal place of business in Chicago, Illinois.

21   12.     BCBS Arkansas, BCBS Florida, BCBS Massachusetts, and BCBC North

22   Carolina are collectively referenced herein as the BCBS Defendants.

23   13.     Defendant B.P. Informatics, LCC ("BPI") is a Delaware limited liability

24   company with its principal place of business in Durham, North Carolina.  No member of BPI is

25   incorporated in California, no member of BPI has its principal place of business in California,

26   and no member of BPI resides in California.

27   14.     Defendant Michael Brown is a resident of Arkansas.  Since at least August 22,

28   2007, Brown has been the Chief Operating Officer of BCBS Arkansas, Chairman of the board

FIRST AMENDED COMPLAINT                    4

1    of directors of Med-Vantage, President of BPI, and Chairman of the member committee of BPI.

2         15.    Defendant Peter Goldbach was, at the time of the initiation of this action, a

3    resident of Massachusetts.  From at least August 22, 2007 to December 2008, Goldbach was

4    Medical Director and Vice President of BCBS Massachusetts and a director of Med-Vantage.

5    Since December 2008, Goldbach has been the CEO of Med-Vantage.

6         16.    Defendant Michael Newman is a resident of Florida.  Since at least August 22,

7    2007, Newman has been Vice President, Medical Informatics of BCBS Florida and a director

8    of Med-Vantage.

9         17.    Defendant Brett Painchaud is a resident of Massachusetts.   Since at least

10   December 8, 2008, Painchaud has been Senior Vice President and Controller for BCBS

11   Massachusetts and a director of Med-Vantage.

12        18.    Defendant Laura Tumperi is a resident of Illinois.  Since at least January 25,

13   2008, Tumperi has been Vice President, Subscriber Service Division of HCSC and a director of

14   Med-Vantage.

15        19.    Defendant Christopher Woodfin is a resident of North Carolina.  Since at least

16   November 2007, Woodfin has been Vice President and Chief Risk Officer of BCBS North

17   Carolina and a director of Med-Vantage.

18        20.    Defendants Brown, Goldbach, Newman, Painchaud, Tumperi, and Woodfin are

19   collectively referenced herein as the Director Defendants.

20   **II.      JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

21        21.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  There is

22   complete diversity of citizenship because Plaintiffs are residents of California, and no

23   Defendant was a resident of the State of California for purposes of diversity pursuant to 28

24   U.S.C. § 1332(c)(1) at the time the action was commenced.  The damages of each plaintiff, and

25   thus the amount in controversy, exceed $75,000, exclusive of costs and interests.

26        22.    This Court has personal jurisdiction over all Defendants because Plaintiffs'

27   claims arise from each of Defendants transacting business in the State of California, causing

28   tortious injury by an act or omission in the State of California, and/or causing tortious injury in

the State of California by an act or omission outside of the State of California, including but not limited to their investment in Med-Vantage, their control over Med-Vantage, their service as directors of Med-Vantage, and their intentional injury of Plaintiffs.  The headquarters and principal place of business of Med-Vantage has, at all times, been in San Francisco, California.

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a substantive part of the events or omissions giving rise to the claim occurred in this district.

24.     This case is properly assigned to the San Francisco Division or Oakland Division because the claims arise in San Francisco, California, where Plaintiffs reside and where Med-Vantage has its principal place of business.

### III.     MED-VANTAGE

25.     Plaintiff Geoffrey Baker founded Med-Vantage in 2001.  Between 2001 and 2007, Baker poured his family's life savings and years of unpaid and underpaid work into building Med-Vantage into a successful software company.  In 2005, Baker sold his family's home and invested the proceeds in Med-Vantage.

26.     Plaintiff Elizabeth Mullen worked for Med-Vantage from April 2005 to July 2007.  As part of her compensation, she received stock options, which she exercised to obtain Med-Vantage shares.

27.     By August 2007, Med-Vantage had grown to be a leader in designing and providing health care business intelligence solutions.  Among other things, Med-Vantage's products used sophisticated and innovative approaches to gather and analyze data to permit health plans to evaluate providers based on their performance and to provide consumer healthcare shopping tools.  Med-Vantage had great potential to capitalize on an unmet market opportunity.

28.     By August 2007, Med-Vantage had grown to more than 40 employees, earned relationships with several major clients including Cigna, and achieved impressive and rapidly-growing revenues.  Med-Vantage had also filed two patent applications.

29.     In 2007, Defendants BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, by and through BPI, conducted nine months of exhaustive due diligence

1    of a potential investment in Med-Vantage.  The result of that due diligence was that BCBS

2    Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, and BPI were

3    impressed by the quality and value of Med-Vantage's intellectual property portfolio, its high-

4    quality engineering team, its strong leadership, and the market potential of its products.

5         **IV.     DEFENDANTS GAIN CONTROL OF MED-VANTAGE**

6         30.     On or about August 21, 2007, Med-Vantage was re-incorporated as a Delaware

7    corporation.

8         31.     On or about August 22, 2007, each of Defendants BCBS Arkansas, BCBS

9    Florida, BCBS North Carolina, and BCBS Massachusetts, directly or through wholly-owned

10   subsidiaries, purchased a 25% interest in BPI.

11        32.     On or about August 22, 2007, Defendants BCBS Arkansas, BCBS Florida,

12   BCBS North Carolina, and BCBS Massachusetts, through their ownership and control of BPI,

13   purchased 52% of the outstanding shares of Med-Vantage.  This transaction left Baker with

14   approximately 31% of the outstanding shares of Med-Vantage on a fully-diluted basis, with the

15   remaining shares owned by Med-Vantage employees, directors, and advisors who had received

16   options or shares as part of their compensation, such as Mullen.

17        33.     On or about August 22, 2007, BPI, Baker, Mullen and others entered into a

18   Stockholders Agreement.  The Stockholders Agreement requires BPI to vote its shares at all

19   regular and special meetings of the Med-Vantage stockholders to ensure that the Med-Vantage

20   board of directors includes Baker or his designee as well as three other individuals nominated

21   by Baker.

22        34.     On or about August 22, 2007, Defendants BCBS Arkansas, BCBS Florida,

23   BCBS North Carolina, and BCBS Massachusetts, through their ownership and control of BPI,

24   nominated as directors of Med-Vantage their respective employees Michael Brown, Michael

25   Newman, Ron Smith, and Peter Goldbach.

26        35.     Michael Brown, Peter Goldbach, Michael Newman, and Ron Smith became

27   Med-Vantage directors on or about August 22, 2007.

28        36.     Starting on or about August 22, 2007 and through approximately November

1    2007, Michael Brown, Peter Goldbach, Michael Newman, and Ron Smith constituted a

2    majority of the board of directors of Med-Vantage.

3        37.    In or about November 2007, Defendant BCBS North Carolina chose to replace

4    Ron Smith as a Med-Vantage director with Christopher Woodfin.  Woodfin became a director

5    of Med-Vantage in or about November 2007.

6        38.    Starting in or about November 2007 through January 25, 2008, directors

7    Michael Brown, Peter Goldbach, Michael Newman, and Christopher Woodfin constituted a

8    majority of the board of directors of Med-Vantage.

9        39.    Starting on or about August 22, 2007 and through January 25, 2008, Defendants

10   BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts controlled Med-

11   Vantage, by and through their ownership and control of BPI, by and through their ownership of

12   a majority of Med-Vantage stock, and by virtue of their employees constituting a majority of

13   the board of directors of Med-Vantage,.

14       40.    In or about December 2007, HCSC bought a 25% interest in BPI.

15       41.    On or about January 25, 2008, HCSC, by and through its control of BPI,

16   nominated Laura Tumperi as a director of Med-Vantage.   Tumperi became a director of Med-

17   Vantage on or about January 25, 2008.

18       42.    Beginning on or about January 25, 2008 and continuing to December 8, 2008,

19   Michael Brown, Peter Goldbach, Michael Newman, Laura Tumperi, and Christopher Woodfin

20   constituted a majority of the board of directors of Med-Vantage.

21       43.    On August 27, 2008, Plaintiff Baker informed BPI in writing of his desire to

22   nominate David Niebauer to the board of directors of Med-Vantage.

23       44.    On November 26, 2008, BPI informed Baker that it "disapproved" of Niebauer

24   as a nominee to the Med-Vantage board of directors.  Baker subsequently proposed another

25   candidate, Peter Stahl, as a nominee instead.

26       45.    On or about November 26, 2008, Peter Goldbach assumed the position of CEO

27   of Med-Vantage.

28       46.    In or about December 2008, BCBS Massachusetts determined to replace Peter

FIRST AMENDED COMPLAINT                    8

Goldbach as a director with Brett Painchaud.

47.     At a Med-Vantage Shareholders Meeting on December 8, 2008, BPI, acting on behalf of BCBS Arkansas, BCBS Florida, BCBS Massachusetts, BCBS North Carolina, and HCSC, reelected to the position of director of Med-Vantage each of Michael Brown, Michael Newman, Laura Tumperi, and Christopher Woodfin and elected Brett Painchaud to the position of director of Med-Vantage.

48.     At a Med-Vantage Shareholders Meeting on December 8, 2008, BPI did not vote for either of Baker's nominees, David Niebauer or Peter Stahl.  Instead, BPI elected six directors it had nominated.

49.     One of the directors elected at the December 8, 2008 Med-Vantage Shareholders Meeting, who had been nominated by Plaintiff Baker, declined to join the Med-Vantage Board. Baker subsequently nominated another candidate, Cabell Tennis, to serve as a director.  BPI has not voted its shares in favor of Mr. Tennis, and has taken no action to move forward on the nomination.

50.     Beginning on or about January 25, 2008 and continuing to present, BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, and HCSC, controlled Med-Vantage by and through their ownership and control of BPI, by and through their ownership of a majority of Med-Vantage stock, and by virtue of their employees constituting a majority of the board of directors of Med-Vantage.

51.     Since taking control of Med-Vantage, Defendants have acted jointly and for a common purpose with regard to their operation of Med-Vantage.  Defendants Michael Brown, Peter Goldbach, Michael Newman, Laura Tumperi, Christopher Woodfin, and Brett Painchaud, in their respective roles as directors of Med-Vantage, have nearly always voted together as a block on Med-Vantage board matters.  Michael Brown and other Defendant-affiliated directors met as the Executive Committee of the Med-Vantage board and discussed and reached agreement about Med-Vantage matters, without any involvement of directors not affiliated with Defendants.  In addition, these and other executives from BCBS Arkansas, BCBS Florida, BCBS North Carolina and BCBS Massachusetts (and HCSC, after it became a member of BPI)

FIRST AMENDED COMPLAINT                    9

have repeatedly met, conversed, and corresponded separately to plan and reach consensus about their planned actions with regard to Med-Vantage, including through BPI member committee meetings.

52.     Each of the Defendants had actual knowledge of, participated in, provided substantial assistance with respect to, and ratified each breach of fiduciary duty and other wrongful acts by each of the other Defendants, and they each did so for their own financial benefit.  Each of the Defendants agreed and conspired with the other Defendants to maintain control of Med-Vantage and exploit Med-Vantage to further their interests to the detriment of minority shareholders like Baker and Mullen, and committed the acts alleged herein in furtherance of that agreement and conspiracy.

## V.     DEFENDANTS OPERATE MED-VANTAGE TO THEIR BENEFIT  AND TO THE DETRIMENT OF MINORITY SHAREHOLDERS

### A.     Budget and Product Roadmap

53.     After taking control of Med-Vantage, the BCBS Defendants, by and through BPI and the Director Defendants then serving as directors, imposed on Med-Vantage a product roadmap that required Med-Vantage to develop and/or significantly enhance six different applications in a year, over the objections of Med-Vantage management and directors not affiliated with Defendants.

54.     Defendants' insistence on a six-product roadmap benefited them at the expense of minority shareholders including Baker and Mullen.  The BCBS Defendants aimed to have a broad array of software they desired to have available to them for their own benefit instead of building a smaller number of products that could be developed in a commercially viable, focused manner and made ready for widespread market sales.

55.     Defendants' insistence on a six-product roadmap also required dedication of resources to that effort and so prevented Med-Vantage from making necessary investments in marketing and sales, including not hiring sufficient sales and marketing staff.  This benefited the BCBS Defendants, who desired software for their own use, to the detriment of minority shareholders, who would have benefited had the company increased sales to others, and it

1    benefited the BCBS Defendants because it reduced competitors' access to Med-Vantage

2    products.

3        56.    Defendants compounded this injury by requiring Med-Vantage to expend scarce

4    resources customizing software applications for their own use and for their own benefit rather

5    than focusing on making products with widespread appeal in the marketplace.

6        57.    The BCBS Defendants, by and through BPI and the Director Defendants then

7    serving as directors, also imposed on Med-Vantage a budget to support the six-product

8    roadmap that required a large number of employees and other expenses, resulting in Med-

9    Vantage spending its capital at an unsustainable rate.  Such expenditures benefited the BCBS

10   Defendants at the expense of minority shareholders by focusing on software development

11   desired by the BCBS Defendants and leaving Med-Vantage cash-starved and a less attractive

12   investment.

13       58.    As a result of the Defendant-imposed product roadmap and budget, and

14   Defendants' other misconduct, Med-Vantage's expenses greatly exceeded its cash collections

15   and, by the end of the first quarter of 2008, Med-Vantage had nearly depleted its capital and, by

16   the first quarter of 2009, Med-Vantage was nearly unable to make its payroll.  Nonetheless,

17   Defendants prevented Med-Vantage management from taking action to reduce and focus

18   expenditures and conserve resources.  This benefited the BCBS Defendants, who desired

19   software and services for their own use, and harmed minority shareholders, because the

20   company's compromised financial position significantly reduced the appeal of the company to

21   other investors and made minority shareholders' shares less valuable.

22       59.    In 2009, outside professional investors expressed interest in investing in Med-

23   Vantage based on its technology and prospects, but also expressed the concern that it could not

24   provide returns to an investor if it was operated as a "captive utility" by its majority owners.

25             **B.      Preventing Collection of Amounts Owed by Defendants**

26       60.    By March 2008, BCBS Arkansas and BCBS Massachusetts each had incurred

27   obligations to Med-Vantage in excess of $100,000 for software licenses and services rendered.

28       61.    The BCBS Defendants, by and through BPI and the Director Defendants then

FIRST AMENDED COMPLAINT            11

serving as directors, used their power as controlling shareholders and directors to delay and prevent Med-Vantage from collecting on these payments, and to attempt to reduce the amounts owed to Med-Vantage, including by threatening Med-Vantage management and directing them not to seek payment on those accounts, despite the objections of Med-Vantage management and directors not affiliated with Defendants.

62.     Defendants' use of their positions as owners and directors to prevent Med-Vantage from collecting debts benefited them at the expense of minority shareholders like Baker and Mullen.  Defendants BCBS Arkansas and BCBS Massachusetts were able to delay or prevent paying for software and other services, and thus keep the use of their funds, while Med-Vantage was in need of cash.

### C.     Preventing Investment by Others

63.     The BCBS Defendants, by and through BPI and the Director Defendants then serving as directors, prevented management from successfully engaging outside investors on possible transactions that would have provided needed capital for Med-Vantage and otherwise significantly increased the value of Med-Vantage shares, over the objections of Med-Vantage management and directors not affiliated with Defendants.

64.     In 2007 and 2008, Med-Vantage management learned that at least two venture capital firms expressed interest in investing in Med-Vantage.  Rather than investigating and considering potential opportunities, Defendants ordered Med-Vantage management to avoid any engagement with these potential investors, and to not begin conversations with any other potential investors, so that Defendants would not lose control of Med-Vantage.

65.     Defendants' insistence that there be no discussion with possible outside investors benefited Defendants and harmed minority shareholders like Baker and Mullen.  An outside investor would have provided needed capital to Med-Vantage and likely would have brought other important benefits, such as relationships with other firms in the industry and new sales markets for Med-Vantage, such as employers and consumers, and thus would have significantly increased the value of Med-Vantage shares, and also would have helped create a market for those shares.  Defendants' refusal to permit Med-Vantage management to consider

1   outside investment protected Defendants' absolute control over Med-Vantage by maintaining

2   the BCBS Defendants' (through BPI) 52% ownership interest and control of a majority of the

3   Med-Vantage board of directors.  Defendants thus also protected their continued ability to run

4   Med-Vantage for their benefit and to siphon the value of Med-Vantage to themselves at the

5   expense of minority shareholders.

6                    **D.      Pricing and Non-Price Terms**

7        66.      The BCBS Defendants, by and through BPI and the Director Defendants then

8   serving as directors, forced Med-Vantage to set below market prices for its software products

9   and services, over the objections of Med-Vantage management.  Defendants' pricing decisions

10  benefited the BCBS Defendants at the expense of minority shareholders like Baker and Mullen.

11  Low prices allowed the BCBS Defendants to obtain Med-Vantage software at reduced expense,

12  but deprived Med-Vantage of revenues that would have provided needed cash and increased

13  the appeal of Med-Vantage to investors.

14       67.      Defendants also required Med-Vantage to agree to onerous, non-standard terms

15  in its license and service contracts with the BCBS Defendants.  In some instances, the BCBS

16  Defendants obtained these favorable terms in agreements by installing their own employees in

17  positions at Med-Vantage, and then using those employees to give the BCBS Defendants

18  favorable terms.  For example, employees from BCBS Florida and BCBS Massachusetts –

19  ostensibly acting on behalf of Med-Vantage – negotiated agreements and pricing terms between

20  Med-Vantage and their employers.  These terms benefited the BCBS Defendants, by giving

21  them superior rights as customers, to the detriment of minority shareholders including Baker

22  and Mullen.

23                **E.      Licensing HCSC to Secure HCSC's Membership in BPI**

24       68.      To induce HCSC to become a member of BPI, Defendants BCBS Arkansas,

25  BCBS Florida, BCBS North Carolina, BCBS Massachusetts, through Med-Vantage Chairman,

26  BCBS Arkansas employee, and BPI President Michael Brown, required Med-Vantage to

27  provide HCSC with valuable rights relating to Med-Vantage source code, over the objections of

28  Med-Vantage management.

FIRST AMENDED COMPLAINT                          13

69.     Requiring Med-Vantage to provide valuable rights to HCSC relating to Med-Vantage's source code benefited BPI and the BCBS Defendants at the expense of minority shareholders like Baker and Mullen.  HCSC paid each of BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, either directly or by making payment to BPI, in exchange for its membership in BPI.  None of the minority shareholders, including Baker and Mullen, received any value for those payments or for the rights conferred on HCSC.

### F.     Shifting Corporate Opportunities

70.     The BCBS Defendants, by and through BPI and the Director Defendants then serving as directors, prevented Med-Vantage from pursuing opportunities to expand into additional markets, such as using existing products as a platform to serve employers, providers, and consumers rather than sole reliance on health insurers.  Such efforts offered significant benefit to Med-Vantage and its shareholders, including revenue opportunities and investor appeal.

71.     Despite objections from Med-Vantage management and directors not affiliated with Defendants, however, Defendants opposed and prevented Med-Vantage from pursuing these opportunities based on their own self-interest.  Defendants caused Med-Vantage to avoid efforts to compete in new markets, which would have traded-off with efforts to build and customize software for the BCBS Defendants' benefit, and which would have made Med-Vantage a competitor to BPI and BCBS Defendants in providing software and services to employers, who are crucial customers of health insurers.  Moreover, Med-Vantage's efforts to sell to the employer market would have competed with sales by at least one other company in which the BCBS Defendants invested, Intelimedix, a healthcare information technology company that BPI acquired, and Defendants therefore sought to protect Intelimedix and the BCBS Defendants' other investments from competition from, and which was to the detriment of, Med-Vantage.

### G.     Seizure and Copying of Source Code

72.     On information and belief, the BCBS Defendants, by and through BPI and the Director Defendants then serving as directors, have used their control over Med-Vantage to

1    obtain, for their benefit and use, a copy of valuable Med-Vantage source code.  Defendants do

2    not have rights to possess or use this source code.

3           73.    On information and belief, Defendants have used or will use the source code

4    obtained from Med-Vantage in order to avoid paying full market value for Med-Vantage

5    licensing fees, maintenance fees, or other fees.

6           74.    Defendants' obtaining and using source code improperly obtained from Med-

7    Vantage has or will injure minority shareholders by, among other things, reducing payments to

8    Med-Vantage and reducing the value of Med-Vantage's intellectual property portfolio and its

9    appeal to investors and other acquirers.

10                 **H.     Cash Crisis and Secured Convertible Credit Facility**

11          75.    At the December 8, 2008 Med-Vantage shareholder meeting, Defendant

12   Goldbach and Mark Sizemore (an employee of BCBS Massachusetts) presented to the

13   shareholders financial statements showing approximately $4 million in cash and accounts

14   receivable.  Goldbach and Sizemore also presented projections that Med-Vantage would earn

15   approximately $20 million in sales in 2009.  Defendants Brown, Newman, Painchaud, and

16   Woodfin were at that meeting, and did not correct Mr. Goldbach or Mr. Sizemore.

17          76.    On January 16, 2009, Defendant Goldbach circulated to the Med-Vantage board

18   a presentation including some financial information about Med-Vantage.  The presentation

19   stated that Med-Vantage had approximately $3 million cash on hand.

20          77.    On March 9, 2009, the day before a scheduled board meeting, defendant

21   Goldbach provided to directors not affiliated with the Blues with the first updated financial

22   statements since the shareholder meeting on December 8, 2008.  The new financial statements

23   indicated that Med-Vantage would have very little cash at the end of March 2009.

24          78.    At a March 10, 2009 meeting of the Med-Vantage board, the directors were

25   asked to approve a Secured Convertible Credit Facility between Med-Vantage and BPI.  The

26   terms of the Facility were unfair and one-sided, and included a security interest on all of Med-

27   Vantage's assets.  As a result, if Med-Vantage were unable or unwilling to make payments on

28   the Facility, BPI could take possession of all the assets of Med-Vantage.  Because of

1    Defendants' wrongful conduct, whether Med-Vantage was able to make payments on the

2    Facility would depend almost entirely whether BPI and its owners made payments to Med-

3    Vantage.  Thus, the Facility would have left BPI and its owners with the practical ability, at

4    virtually any time, to take ownership of all of Med-Vantage's assets.  Furthermore, the Facility

5    also contained terms that would have permitted BPI to convert the debt into stock at the lowest

6    of a number of prices, which would have the effect of diluting the stock of other shareholders

7    such as Plaintiffs.

8            79.    Prior to the March 10, 2009 meeting of the Med-Vantage board of directors, the

9    BCBS Defendants, by and through BPI and the Director Defendants then serving as directors,

10   prevented Med-Vantage from seeking financing from anyone other than BPI and its owners,

11   and prevented directors not affiliated with Defendants from learning of the true financial

12   position of the company so that they could take action.

13           80.    The Med-Vantage board is scheduled to reconsider the Secured Convertible

14   Credit Facility and related agreements at a March 19, 2009 meeting.  If the Secured Convertible

15   Credit Facility is adopted, it will irreparably injure Plaintiffs, including by diluting their

16   ownership stake in Med-Vantage and by redistributing the value of Med-Vantage to BPI and its

17   owners.

18                      **I.    Impact on Minority Shareholders**

19           81.    As a result of Defendants' conduct, the minority shareholders of Med-Vantage

20   have lost any realistic possibility of selling their Med-Vantage shares for value to any buyer.

21   But for Defendants' conduct, Med-Vantage shares would have substantial value.  However,

22   Defendants' breaches of fiduciary duty and other misconduct, including the successful blocking

23   of any investment by venture capital funds or any other professional investor, has reduced or

24   eliminated the value that existed before Defendants acquired control of Med-Vantage and

25   eliminated any prospect of a transaction that would create an opportunity for minority

26   shareholders to sell their shares to anyone other than Defendants.  As a result, Defendants have

27   effectively frozen-out Plaintiffs and other minority shareholders, preventing them from

28   obtaining any value for their shares, while Defendants use Med-Vantage to build software to

FIRST AMENDED COMPLAINT                    16

serve their needs.  Moreover, Defendants' conduct is part of a campaign to drive Plaintiffs and other minority shareholders to sell their shares to Defendants for less than their full value.

## COUNT I

### (Breach of Fiduciary Duty) (Against all Defendants)

82.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein.

83.     Defendants Michael Brown, Peter Goldbach, Michael Newman, Laura Tumperi, Christopher Woodfin, and Brett Painchaud, as well as Ron Smith, as directors and officers of Med-Vantage, owed Med-Vantage shareholders including Baker and Mullen fiduciary duties of care, loyalty, good faith, and honesty.  Defendants Brown, Goldbach, Newman, Tumperi, Woodfin, and Painchaud, as well as Smith, while serving as directors and officers of Med-Vantage, were acting as agents and co-conspirators and on behalf of BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, HCSC, and BPI.

84.     Defendants BCBS Arkansas, BCBS Florida, BCBS North Carolina, BCBS Massachusetts, HCSC, and BPI, as controlling shareholders, owed Med-Vantage shareholders including Baker and Mullen fiduciary duties of care, loyalty, good faith, and honesty.

85.     Defendants breached their fiduciary duties, through the acts and omissions described above, including but not limited to:

        a.  Imposing a product roadmap and budget that expended Med-Vantage's available resources at an unsustainable rate to build and customize software for Defendants' use;

        b.  Preventing Med-Vantage management from collecting amounts owed by certain Defendants for the benefit of those Defendants and the other Defendants;

        c.  Blocking Med-Vantage management from pursuing, and by refusing to even consider, possible outside investment so that they could retain control of Med-Vantage for their own benefit;

        d.  Causing Med-Vantage to set prices below what the market would bear,

to obtain Med-Vantage software for themselves cheaply despite the negative impact on Med-Vantage's revenues, and by requiring Med-Vantage to agree to onerous non-standard terms in agreements with Defendants;

e.  Preventing Med-Vantage from pursuing valuable market opportunities, such as software sales to employers and consumers, to avoid competition with Defendants and their investments;

f.  Requiring Med-Vantage to grant valuable rights relating to source code to HCSC without receiving adequate compensation so that HCSC would become a member of BPI and provide equity and/or payments to the other Defendants; and

g.  Forcing Med-Vantage to agree to the Secured Convertible Credit Facility and related agreements.

86.   These actions were undertaken and approved by self-interested directors and those controlling them, without any approval by disinterested directors, an independent committee, or disinterested stockholders, and benefited Defendants to the detriment of minority shareholders including Baker and Mullen.

87.   The actions described above were not fair, were undertaken in subjective bad faith, and were motivated by an intent to benefit Defendants at the expense of minority shareholders.  This includes consolidation and entrenchment of control over Med-Vantage and siphoning the economic value of Med-Vantage to Defendants and away from minority shareholders including Baker and Mullen.

88.   Each of the Defendants had actual knowledge of, participated in, provided substantial assistance with respect to, and ratified each breach of fiduciary duty by each of the other Defendants, and each obtained a financial benefit as a result.  Each of the Defendants aided and abetted and conspired to undertake the others' breaches of fiduciary duty by, among other things, voting in support of their actions, communicating their support to other Defendants and to Med-Vantage management, failing to object to the breaches, or establish an

FIRST AMENDED COMPLAINT                    18

1   independent committee of the board of directors to correct the breaches, and failing to remove

2   any of the Defendants as a director of Med-Vantage.

3        89.     Defendants' acts and omissions described above proximately injured Baker and

4   Mullen by, among other things, reducing the value of Med-Vantage shares they own, by

5   eliminating the possibility of a sale of their Med-Vantage shares for value, and by threatening

6   to dilute Plaintiffs' ownership interest in Med-Vantage.

7        90.     Defendants' acts and omissions described above were malicious and were

8   intended to injure Baker and Mullen.

9        91.     Baker and Mullen are entitled to damages, punitive damages, and injunctive

10  relief.

11                              **<u>COUNT II</u>**

12                **(Minority Shareholder Oppression) (Against all Defendants)**

13       92.     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

14  herein.

15       93.     Defendants controlled Med-Vantage by owning a 52% interest in Med-Vantage

16  and by comprising (and having the power to appoint) a majority of the board of directors of

17  Med-Vantage.

18       94.      Defendants' acts and omissions described above violated the reasonable

19  expectations of minority shareholders including Baker and Mullen, and constituted

20  burdensome, harsh, and wrongful conduct demonstrating a lack of probity and fair dealing in

21  the affairs of Med-Vantage to the prejudice of minority shareholders including Baker and

22  Mullen.

23       95.     Defendants' acts and omissions described above proximately injured Baker and

24  Mullen by, among other things, reducing the value of Med-Vantage shares they own,

25  eliminating the possibility of a sale for their Med-Vantage shares for value, and threatening to

26  dilute Plaintiffs' ownership interest in Med-Vantage.

27       96.     Defendants' acts and omissions described above were malicious and were

28  intended to injure Baker and Mullen.

FIRST AMENDED COMPLAINT                          19

1    97.    Baker and Mullen are entitled to damages, punitive damages, and injunctive

2  relief.

3                              **COUNT III**

4              **(Violation of Unfair Competition Law) (Against all Defendants)**

5    98.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

6  herein.

7    99.     Defendants have engaged in, and continue to engage in, acts or practices that

8  constitute unfair competition, as that term is defined in Section 17200 of the California

9  Business and Professions Code.  Such acts and practices include the conduct described above,

10 which comprised an unlawful and deceptive scheme to maintain control over Med-Vantage by

11 conspiring to obtain control of Med-Vantage with the intent to commit the acts and omissions

12 described above, to prevent fair and honest competition for the purchase of the Med-Vantage

13 shares, to extract value from Med-Vantage for Defendants' benefit and at the expense of

14 minority shareholders, and to prevent minority shareholders from obtaining the best and highest

15 price for their share holdings.

16   100.    Defendants' conduct is "unfair" under California Business and Professions Code

17 § 17200 because, among other things, it offends established public policy and/or is immoral,

18 unethical, oppressive, unscrupulous, and injurious to minority shareholders.

19   101.    Defendants' conduct is "unlawful" under California Business and Professions

20 Code § 17200 because, among other things, it violates fiduciary duties established by law.

21   102.    Defendants' conduct has injured Baker and Mullen in fact by reducing the value

22 of their Med-Vantage shares and by preventing opportunities for Baker and Mullen to sell those

23 shares for value.

24   103.    Baker and Mullen are entitled to restitution and injunctive relief.

25                              **COUNT IV**

26              **(Breach of Contract) (Against B.P. Informatics LLC)**

27   104.    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

28 herein.

FIRST AMENDED COMPLAINT                    20

105.   Michael Brown signed the Stockholders Agreement as President of BPI.  The Stockholders Agreement is a valid, enforceable contract.

106.   BPI has breached the Stockholders Agreement, including the implied covenant of good faith and fair dealing, by failing to vote its Med-Vantage, Inc. shares in favor of directors nominated by Baker, by unreasonably and in bad faith failing to approve nominees proposed by Baker, and by unreasonably and in bad faith failing to act on nominees proposed by Baker.

107.   Plaintiffs have been injured by BPI's breach of the Stockholders Agreement because the Med-Vantage board lacks sufficient directors that are independent of BPI and its owners.  Plaintiff Baker has been irreparably injured by the loss of his full right to nominate directors of a corporation in which he holds a substantial economic interest.

108.   Baker and Mullen are entitled to damages and injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs Geoffrey Baker and Elizabeth Mullen pray for judgment against Defendants as follows:

1.   The Court enter a judgment against Defendants declaring that

    a.   Defendants have violated their fiduciary duties of care, loyalty, good faith, and honesty;

    b.   Defendants have oppressed minority shareholders including Plaintiffs;

    c.   Defendants have violated California Business & Professions Code § 17200; and

    d.   BPI has violated the Shareholder Agreement.

2.   The Court issue a permanent injunction prohibiting Defendants and all those in active concert or participation with them from any further violation of their fiduciary duties, from further oppression of minority shareholders, from further violations of California Business & Professions Code § 17200, from further violations of the Stockholders Agreement;

3.   The Court order the Defendants, jointly and severally, to pay Plaintiffs' damages, including pre-judgment interest.

FIRST AMENDED COMPLAINT                    21

1      4.      The Court order Defendants to pay restitution.

2      5.      On account of Defendants' malicious conduct, the Court order Defendants to

3    pay punitive damages.

4      6.      The Court order Defendants to pay Plaintiffs' costs of prosecuting this action,

5    including reasonable attorneys' fees.

6      7.      The Court award any additional relief as is just and proper.

7    **VII.   JURY DEMAND**

8    Plaintiffs request a trial by jury on all issues triable by jury.

9

10   Dated:  March 16, 2009                              Respectfully submitted,

11                                                       **BOIES, SCHILLER & FLEXNER LLP**

12

13                                           By:     _____/s/_____

14                                                   DAVID W. SHAPIRO (219265)
                                                     KIERAN P. RINGGENBERG (208600)
15                                                   BEKO O. REBLITZ-RICHARDSON (238027)
                                                     1999 Harrison Street, Suite 900
16                                                   Oakland, CA 94612
                                                     Telephone: (510) 874-1000
17                                                   Facsimile: (510) 874-1460
                                                     Email:  dshapiro@bsfllp.com
18                                                           kringgenberg@bsfllp.com
                                                            brichardson@bsfllp.com
19

20                                                   *Attorneys for Plaintiffs Geoffrey Baker and*
                                                     *Elizabeth Mullen*
21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT                    22