UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| GEOFFREY BAKER and ELIZABETH MULLEN,<br><br>Plaintiffs,<br><br>vs.<br><br>ARKANSAS BLUE CROSS AND BLUE SHIELD, BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS, INC., BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, HEALTHCARE SERVICES CORPORATION, B.P. INFORMATICS LLC, MICHAEL BROWN, PETER GOLDBACH, MICHAEL NEWMAN, BRETT PAINCHAUD, LAURA TUMPERI, and CHRISTOPHER WOODFIN,<br><br>Defendants. | Case No: CV 08-3974 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Docket Nos. 116, 117 and 118] |

This is a diversity jurisdiction action, 28 U.S.C. § 1332, brought by Plaintiffs Geoffrey Baker and Elizabeth Mullen against B.P. Informatics LLC ("BPI") and others. Plaintiffs are minority shareholders in a company known as Med-Vantage, Inc. ("Med-Vantage"), a software company founded by Baker. In their First Amended Complaint ("Amended Complaint"), Plaintiffs allege that the company's majority shareholder, BPI, along with various affiliated entities and certain Med-Vantage Board members, have managed Med-Vantage for their own benefit, thereby causing the value of Plaintiffs' shares in the company to decline.

The parties are presently before the Court on Defendants' motions to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Nos. 116, 117, 118.) Having read and considered the papers filed in connection with the motions, and being fully informed, the Court GRANTS the motions as to Plaintiffs' claims for breach of fiduciary duty, minority shareholder oppression and violation of California's Unfair Competition Law ("UCL"), and DENIES Defendant BPI's motion as to Plaintiffs' claim for breach of contract. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I. BACKGROUND

### A. FACTUAL OVERVIEW

Med-Vantage is a privately held company that sells data analysis software used by health plans. (Id. ¶¶ 25-27.) Plaintiff Baker currently holds stock in the company, which he founded in 2001. (Id.) Co-plaintiff Elizabeth Mullen worked for the company from 2005 to 2007, and like Baker, is a Med-Vantage stockholder. (Id. ¶ 26.)

Sometime in 2007, Defendants Arkansas Blue Cross and Blue Shield ("BCBS Arkansas"), Blue Cross and Blue Shield of Florida, Inc. ("BCBS Florida"), Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS Massachusetts") and Blue Cross and Blue Shield of North Carolina ("BCBS North Carolina"), by and through BPI, expressed interest in investing in Med-Vantage and conducted months of due diligence. (Id. ¶ 29.)[1]

On August 22, 2007, BPI, Baker, Mullen and others entered into a Stockholder Agreement, pursuant to which BPI acquired a 52% interest in Med-Vantage, leaving Baker with a 31% equity interest. (Id. ¶ 32; Lugo Decl. Ex. A.) The agreement allowed for a change in the composition of the company's Board of Directors, as set forth in Article II, which is captioned "Agreement to Vote Shares." (Lugo Decl. Ex. A, Art. II.) Section 2.2(b) of the agreement states: "Stockholders shall vote their Shares … to cause the size of the Company's initial Board of Directors ("the Board") to be set at nine (9) directors and to elect the following directors to the Board: (i) five (5) directors

---

[1] Twenty-five percent of BPI is owned by BCBS Arkansas, BCBS Florida, BCBS Massachusetts and BCBS North Carolina (collectively "BCBS Defendants"). (Am. Compl. ¶ 31.)

- 2 -

nominated by the Investor [i.e., BPI]; (ii) the Founder [i.e., Baker] or his designee; (iii) three (3) outside directors nominated by the Founder in consultation with the Investor and approved by the Investor." (Id. § 2.2(b).) Under this provision, BPI nominated four individuals, who became Board members. (Am. Compl. ¶¶ 34-35.) In December 2007, Defendant Health Care Service Corporation ("HCSC") bought a 25% interest in BPI, and nominated its own director, who was elected to the Board on January 28, 2008. (Id. ¶¶ 40-41.) At that point, BPI had five Board seats and control of the Board. (Id. ¶ 42.)

On August 27, 2008, Baker informed BPI that he was exercising his rights under the Stockholder Agreement and nominating David Nibauer to the Board. (Id. ¶ 43; Pl.'s Request for Judicial Notice Ex. A at 1.) BPI "disapproved" of Nibauer, and as a result, Baker nominated Peter Stahl instead. (Am. Compl. ¶ 44.) At the next shareholder meeting held on December 8, 2008, BPI reelected its chosen Board members (Michael Brown, Michael Newman, Laura Tunperi and Christopher Woodfin) and elected Brett Painchaud. (Id. ¶ 47.) BPI did not vote for either of Baker's nominees, David Niebauer or Peter Stahl. (Id. ¶ 48.) Apparently, another of Baker's nominees was, in fact, elected to the Board, but he declined to join. (Id. ¶ 49.) As a result, Baker nominated Cabell Tennis to serve as a director, though BPI has yet to vote its shares for him or take any action on the nomination. (Id. ¶ 49.) As of the December 2008 election, BPI had attained six Board seats. (Id. ¶ 48.)[2]

According to Plaintiffs, once BPI gained control of the Board, it began to embark on a strategy allegedly intended to benefit Defendants, at the other shareholders' expense. (Id. ¶ 51.) Among other things, the pleadings aver that Defendants, through BPI, caused Med-Vantage to embark on an ill-conceived product strategy that favored the BCBS Defendants' interests, instead of developing commercially viable software which would have benefitted the company. (Id. ¶¶ 54-55.) Such conduct allegedly caused Med-Vantage to expend its already limited resources at an

---

[2] The Amended Complaint alleges that Painchaud was supposed to replace Peter Goldbach as a director, and that Painchaud was elected on December 8, 2008. (Am. Compl. ¶ 46.) Later, however, the pleadings state that Goldbach remained on the Board alongside Painchaud. (Id. ¶ 51.)

unsustainable rate, "leaving Med-Vantage cash-starved and a less attractive investment" to potential investors. (Id. ¶¶ 57, 59.)

In addition, Defendants purportedly sought to maintain its control of the company by preventing outside investment, which would have "provided needed capital for Med-Vantage and otherwise significantly increased the value of Med-Vantage shares[.]" (Id. ¶ 63.) Outside investors "likely would have brought other important benefits, such as relationships with other firms in the industry and new sales markets for Med-Vantage … and thus would have significantly increased the value of Med-Vantage shares, and also would have helped create a market for those shares." (Id. ¶ 65.) Defendants further depressed the value of Med-Vantage stock ostensibly by selling its software at below market prices, which helped Defendants obtain the software at reduced cost, but at the same time "deprived Med-Vantage of revenues that would have provided needed cash and increased the appeal of Med-Vantage to investors." (Id. ¶ 66.) According to Plaintiffs, "[b]ut for Defendants' conduct, Med-Vantage shares would have substantial value." (Id. ¶ 81.)

The above conduct, coupled with other actions by Defendants (e.g., Am. Compl. ¶¶ 68-74) eventually led to a "cash crisis" at Med-Vantage. (Id. ¶ 75.) The company's cash flow issues culminated in a line of credit (referred to as a Secured Convertible Credit Facility) being offered by BPI to Med-Vantage. (Id. ¶ 78.) Plaintiffs allege that the terms of the line of credit are "unfair and one-sided" and effectively allow BPI to take possession of all of the company's assets should it default on its payments. (Id.)

### B. PROCEDURAL SUMMARY

On March 17, 2009, Plaintiffs filed their Amended Complaint against BPI, BCBS Arkansas, BCBS Florida, BCBS North Carolina and BCBS Massachusetts, HCSC, and Board members Michael Brown, Peter Goldbach, Michael Newman, Brett Painchaud, Laura Tunperi and Christopher Woodfin. The Amended Complaint alleges four state law causes of action for (1) breach of fiduciary duty; (2) minority shareholder oppression; (3) violation of UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*; and (4) breach of contract. These causes of action are alleged

1 against each Defendant, except for the fourth claim for breach of contract which is alleged against
2 BPI only.³

3 Three groups of Defendants have filed motions to dismiss under Federal Rule of Civil
4 Procedure 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim. The issues
5 presented in the motions are essentially the same and will be discussed together. First, Defendants
6 contend that Plaintiffs lack standing to bring *direct* claims for breach of fiduciary duty, minority
7 shareholder oppression and violation of the UCL. Specifically, Defendants contend that Plaintiffs'
8 claimed injury is for loss of shareholder value, which can be brought only as a *shareholder*
9 *derivative action*, not as a *direct* claim. As for the breach of contract claim, BPI argues that
10 Plaintiffs have failed to allege facts sufficient to show a breach or that they sustained any
11 recoverable damages. The Court discusses these issues seriatim.⁴

## II. LEGAL STANDARDS

### A. RULE 12(b)(1)

Rule 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. A jurisdictional attack may be facial or factual. White, 227 F.3d at 1242. "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise involve federal jurisdiction." Id. "In such circumstances, a court

---

³ Med-Vantage is a Delaware corporation. (Am. Compl. ¶ 30.) The parties agree that Delaware law controls in this action. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1527 (9th Cir. 1985).

⁴ Standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). Standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III, ... [and therefore is] properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "A plaintiff has the burden of establishing the elements required for standing." Wilbur v. Locke, 423 F.3d 1101, 1107 (9th Cir. 2005). Here, the issue of Plaintiffs' standing will be analyzed under Rule 12(b)(1). BPI's argument regarding the breach of contract claim is based on the sufficiency of the allegations and will be addressed in accordance with the standards applicable to Rule 12(b)(6) motions.

may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of the truthfulness of the Plaintiff's allegations." Id.

### B. RULE 12(b)(6)

Under Rule 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (internal quotation marks omitted); Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Johnson v. Riverside Healthcare Sys. LP, 534 F.3d 1116, 1122 (9th Cir. 2008). "In general, the inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

## III. DISCUSSION

### A. BREACH OF FIDUCIARY DUTY

The threshold question presented is whether Plaintiffs' claims are *direct* or *derivative*.[5] "The distinction between derivative and individual [i.e., direct] actions rests upon the party being directly injured by the alleged wrongdoing." See Kramer v. Western Pacific Indus., Inc., 546 A.2d 348, 351 (Del.1988). A direct claim lies where the plaintiff-shareholder seeks recovery for harm suffered by him, separate and apart from the corporation. Id. In contrast, a derivative claim is one where the harm is suffered by the corporation. Id. This distinction is critical to the issue of standing. Where a claim is derivative, it must be brought under the auspices of a shareholder derivative action, subject to the requirements of Federal Rule of Civil Procedure 23.1. See Sax v. World Wide Press, Inc., 809 F.2d 610, 613 (9th Cir. 1987); In re Citigroup Inc. Shareholder

---

[5] "In diversity actions, the characterization of an action as derivative or direct is a question of state law." Sax, 809 F.2d at 613.

Derivative Litig., 964 A.2d 106, 120 (2009).[6]  This is so since "[a] derivative claim belongs to the corporation, not to the shareholder plaintiff who brings the action."  In re M & F Worldwide Corp. Shareholders Litig., 799 A.2d 1164, 1171 n.34 (Del. Ch. 2002).

In Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1033 (Del. 2004), the Delaware Supreme Court held that the issue of "whether a stockholder's claim is derivative or direct ... must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Id. at 1033.  To qualify as a direct claim, the claimed injury "must be independent of any alleged injury to the corporation." Id. at 1039.  In other words, the plaintiff shareholder "must demonstrate that the duty breached was owed to [him] and that he ... can prevail *without showing an injury to the corporation*." Id. (emphasis added).  In analyzing this issue, the court may not rely on the manner in which the plaintiff has characterized his claims, but instead, "must look to all the facts of the complaint...." See Dietrich v. Harrer, 857 A.2d 1017, 1027 (Del. Ch. 2004); In re Syncor lnt'l Corp. Shareholders Litig., 857 A.2d 994, 997 (Del. Ch. 2004) (noting that the court must "look at the nature of the wrong alleged, not merely at the form of the words in the complaint").

In this case, there can be no legitimate dispute that the harm at issue was suffered by the corporation, and not *solely* the minority shareholders.  The Amended Complaint alleges that Defendants engaged in various acts of self-dealing and mismanagement that included self-serving product, sales and marketing strategies, entering into questionable financial transactions and rendering the company unattractive to outside investors.  (E.g., Am. Compl. ¶¶ 53-80.)  Although the alleged acts of malfeasance are varied, they all allegedly resulted in the same harm:  loss of shareholder value.   Plaintiffs make this point clear in their claim for breach of fiduciary duty

---

[6] Rule 23.1 requires that a plaintiff first make a pre-lawsuit demand on the corporation's Board of Directors or plead with particularity facts that such a demand would have been futile. Potter v. Hughes, 546 F.3d 1051, 1056 (9th Cir. 2008).  The failure to comply with Rule 23.1 justifies dismissal of the putative derivative action.  Id.  Plaintiffs admittedly have not complied with Rule 23.1.

where they allege that "Defendants' acts and omissions described above proximately injured Baker and Mullen, among other things, by *reducing the value of the shares they own*, [and] eliminating the possibility of a sale for their Med-Vantage shares for value…." (Id. ¶ 89 (emphasis added); see also id. ¶ 81 ("[a]s a result of Defendants' conduct, the minority shareholders of Med-Vantage have lost any realistic possibility of selling their Med-Vantage shares for value to any buyer. *But for Defendants' conduct, Med-Vantage shares would have substantial value*.") (emphasis added).)

Delaware case law firmly establishes that Plaintiffs' claims are derivative, not direct. Although Plaintiffs emphasize that the alleged impact of Defendants' actions was aimed at the minority shareholders, the inescapable fact is that the alleged loss is the loss of shareholder value. "A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder." Kramer, 546 A.2d at 353; e.g., Agostino v. Hicks, 845 A.2d 1110, 1123 (Del. Ch.2004) (where actions "harmed the Company because the Company [was] precluded from entering into a transaction that would have maximized the return on its assets," and where this failure to maximize assets caused the shareholders to receive much less of a return on their investment than they might otherwise have realized, the claim was "nothing more than a claim of mismanagement that, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders" and "is entirely derivative in nature"); In re Syncor lnt'l Corp. Shareholders Litig., 857 A.2d at 997 (managerial misconduct connected to the company's "core business activities" was "derivative, not direct").

Endeavoring to avoid dismissal, Plaintiffs argue that a direct claim for breach of fiduciary duty is permissible where the controlling shareholder "extracts" value from the minority shareholders and procures a financial benefit exclusive to itself. (Opp'n at 8.) As support, Plaintiffs rely principally on Gentile v. Rossette, 906 A.2d 91 (Del. 2006), where the court recognized that certain injuries may give rise to both a derivative *and* a direct claim. Id. at 100 n.19. In Gentile, minority shareholders sued the company's Chief Executive Officer ("CEO"), who also was its controlling shareholder. In exchange for repayment of debt owed to him, the CEO

accepted stock whose value allegedly exceeded the value of the forgiven debt. Id. at 93. The trial court dismissed the action on the ground that the claim was exclusively derivative, and the minority shareholders appealed.

The Delaware Supreme Court reversed and held that plaintiffs' claim could be brought as a derivative as well as a direct claim. Id. The court began its analysis by noting that the transaction in dispute could be characterized as a "corporate overpayment claim," which is typically deemed derivative because "any dilution in the value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity[.]" Id. at 99. At the same time, however, such conduct also may give rise to a "separate, and direct" claim, where "the shares representing the 'overpayment' embody both economic power *and voting power*[.]" Id. at 100 (emphasis added). In those instances, "a separate harm [] results: an extraction from the public shareholders, and a redistribution to the controlling shareholder, of a portion of the economic value and voting power embodied in the minority interest. As a consequence, the public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited." Id. In those particular "atypical" circumstances, the adversely affected shareholder may thus bring a direct claim. Id. n.21; accord Gatz v. Ponsoldt, 925 A.2d 1265, 1278-279 (Del. 2007).

Here, Plaintiffs argue that they have alleged "both an extraction of value to controlling shareholders and a dilutive transaction" which, they claim, is sufficient to sustain a direct claim under Gentile and Gatz.[7] The Court disagrees. Neither of those cases holds that loss of shareholder value, standing alone, is sufficient to state a direct claim. Rather, what is critical is the loss of value *coupled with* a corresponding loss in voting power resulting from the challenged transaction. See Gentile, 906 A.2d at 100; Gatz, 925 A.2d at 1281. No such allegations are presented in this case. The harm alleged in the Amended Complaint is the decline in the value of their Med-Vantage stock (Am. Compl. ¶ 3-4, 53-81, 85, 89, 95, 102)—which is an injury experienced equally by the minority shareholders *and* the corporation. Because no *independent*

---

[7] Actually, the Amended Complaint alleges that Defendants' actions "threaten[] to dilute Plaintiffs' ownership interest…." (Am. Compl. ¶ 89.)

harm to Plaintiffs has been alleged, the harms alleged in this case may only be presented through a shareholder derivative action. See Tooley, 845 A.2d at 1035 ("The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.").[8]

Equally misplaced is Plaintiffs' reliance on an unpublished Chancery Court decision, Rhodes v. Silkroad Equity, LLC, No. Civ. A. 2133-VCN, 2007 WL 2058736 (Del. Ch. 2007). In that case, the controlling shareholder-defendant sold its assets to the corporation for a greater than fair value price to devalue the corporation, causing plaintiffs to lose all of their shares. According to Plaintiffs, Rhodes stands for the proposition that a plaintiff may pursue a direct claim where the controlling shareholders are alleged to have disproportionately benefitted from a transaction as compared to the minority shareholders. (Opp'n at 11-12.) Rhodes does not support such an expansive reading of Gentile and Gatz. Rather, the court merely ruled that the defendants "caused a direct harm to Plaintiffs by the 'extraction' of economic value *and residual voting power* to themselves as controlling shareholders." Rhodes, 2007 WL 2058736 at *5 (emphasis added). The plaintiffs in Rhodes suffered an injury separate from the corporation when defendants forced them out of the company, thereby acquiring all of their shares and voting power. Id. In contrast, Plaintiffs herein allege that their Med-Vantage shares have lost value, but they do not claim to have lost their shares or voting rights.[9]

Finally, the Court finds no merit to Plaintiffs' alternative contention that they have standing under an "imminent dilution" theory. (Opp'n at 12-14.) Plaintiffs concede that there has been no dilution in their equity stake in Med-Vantage, but assert that such dilution is sufficiently imminent for purposes of standing. (Id.) "To enforce Article III's limitation of federal jurisdiction to 'cases and controversies,' plaintiffs must demonstrate both standing and ripeness." Nelson v. National

---

[8] Plaintiffs seem to equate "extraction" of value, as that term is used in Gentile, with a loss in shareholder value suffered by minority shareholders. The Gentile court clarified that "extraction" simply means the "impact of the transaction upon the shareholder value *and voting power*…." Gentile, 906 A.2d at 102 n.21.

[9] It bears noting that the Court's ruling on the instant motions to dismiss is based on the facts as alleged on the date of the filing of the Complaint. Davis & Cox, 751 F.2d at 1527 (standing ascertained as of the date the complaint is filed). The Court's ruling on the pending motions does not foreclose the *possibility* of a future claim in the event that Plaintiffs are, in fact, driven out by Defendants in order to acquire all of their shares and corresponding voting rights.

Aeronautics and Space Admin., 530 F.3d 865, 873 (9th Cir. 2008). A claim is not ripe to the extent it rests upon contingent future events that may not occur as anticipated. Bova v. City of Medford, 564 F.3d 1093, 1097 (9th Cir. 2009). "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Plaintiffs allege that Defendants have complete control over whether Med-Vantage will continue to make payments on the line of credit upon which the company is allegedly dependent for survival. As such, they claim that Defendants have the ability to dilute their interests "at any time." (Opp'n at 13.) However, this Court previously addressed the speculative nature of Plaintiffs' claim of imminent dilution when it denied Plaintiffs' application for a temporary restraining order ("TRO") to prevent Med-Vantage from entering into an agreement with BPI for the aforementioned line of credit. In connection with that motion, Plaintiffs argued that BPI would use its control of Med-Vantage and cause it to default on the line of credit which, in turn, would allow BPI to convert its debt into equity, thus potentially diminishing Baker's equity interest. (See Docket 95, TRO at 13.) The Court found Plaintiffs' claim of imminent injury speculative because it was dependent upon whether Med-Advantage actually defaulted on the line of credit, and if so, whether BPI elected to convert its debt to equity. (Docket 108, Order Denying TRO at 3.) That same rationale applies here as well. As such, the Court finds that the alleged imminent dilution of its equity to be too speculative for purposes of demonstrating ripeness under Article III.

**B.     MINORITY OPPRESSION/CALIFORNIA UNFAIR COMPETITION LAW**

The parties next dispute whether Plaintiffs' second claim for minority shareholder oppression and third claim for violation of California's UCL are also barred as derivative claims. As discussed above, a plaintiff's standing to sue a corporation is determined, not by how the claim is styled, but rather, by "the nature of the wrong and to whom the relief should go." In re Syncor lnt'l Corp. Shareholders Litig., 857 A.2d at 997.

With regard to their claim for minority oppression, Plaintiffs contend that such claim is direct because the right being asserted belongs to the shareholders, not the corporation. As an

- 11 -

initial matter, it is questionable whether a claim for minority shareholder oppression is even cognizable under Delaware law. See Nixon v. Blackwell, 626 A.2d 1366, 1380-81 (Del. 1993) (finding that unless the corporation is a statutory "close corporation," majority shareholders owe no special fiduciary duties to minority shareholders); Nightingale & Assocs., LLC v. Hopkins, 2008 WL 4848765 at *6 (D.N.J. 2008) ("Delaware does not have a statutory cause of action for minority shareholder oppression"). Assuming arguendo that such a claim were viable, it is evident from the Amended Complaint that Plaintiffs' claim for minority shareholder oppression, like their claim for breach of fiduciary duty, is based on the alleged loss of shareholder value. (Compare Am. Compl. ¶ 89 with ¶ 95.)[10] Thus, for the same reasons discussed above in connection with the first claim for breach of fiduciary duty, the Court finds that Plaintiffs lack standing to allege a claim for minority oppression, to the extent that such a claim exists.

Likewise, Plaintiffs' claim for violation of the UCL alleges that the injury suffered is the loss in value of their shares in Med-Vantage. (Am. Compl. ¶ 102.) The case cited by Plaintiff is inapposite. Plaintiffs cite Everest Investors 8 v. McNeil Partners, 114 Cal. App. 4th 411 (2003) ("Everest") for the notion that the UCL permits individual claims for "extraction of value." (Opp'n at 15.) Plaintiffs read too much into Everest. There, the court permitted limited partners to sue their general partner under the UCL and a variety of other legal theories based on its determination that the harm alleged was suffered by the limited partners only, as opposed to the partnerships or any of the other partners. Id. at 428-29. That situation is not presented here, where the only harm alleged impacts the corporation, and indirectly, *all* Med-Vantage shareholders.

### C. BREACH OF CONTRACT

Plaintiffs' fourth claim is for breach of contract against BPI only. The Amended Complaint alleges that BPI expressly breached the Stockholders Agreement, as well as the implied covenant of good faith and fair dealing, "by failing to vote its Med-Vantage, Inc. shares in favor of directors

---

[10] Paragraph 89, which is part of the breach of fiduciary duty claim, and Paragraph 95, which is included in the minority shareholder claim, read identically, as follows: "Defendants' acts and omissions described above proximately injured Baker and Mullen, among other things, by *reducing the value of the shares they own*, eliminating the possibility of a sale for their Med-Vantage shares for value, and threatening to dilute Plaintiff's ownership interest in Med-Vantage." (Am. Compl. ¶¶ 89, 95 (emphasis added).)

nominated by Baker, by unreasonably and in bad faith failing to approve nominees proposed by Baker, and by unreasonably and in bad faith failing to act on nominees proposed by Baker." (Am. Compl. ¶ 106.) Plaintiffs aver that they have been injured by BPI's alleged breach "because the Med-Vantage Board lacks sufficient directors that are independent of BPI and its owners." (Id. ¶ 21.) They also allege that Plaintiff Baker has been "irreparably injured" as a result of Defendants' failure to comply with their express and implied contractual obligations. (Id.)

The elements of a breach of contract are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff. H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003). The covenant of good faith and fair dealing, which is implied in every contract, "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." Dunlap v. State Farm Fire & Cas. Co., 878 A.2d 434, 441 (Del. 2005). BPI acknowledges that the Stockholder Agreement is a valid contract, but argues that the Amended Complaint should be dismissed for failure to allege a *breach* of agreement, failure to allege *damages* and that Plaintiffs "acquiesced" to any breach. (BPI Mot. at 22-24.) None of these arguments has any merit.

1. **Breach**

BPI first contends that its only contractual obligation under the Stockholders Agreement is to *nominate* Board members proposed by Baker—and not to actually *vote* for them. (BPI Mot. at 22.) This construction of the agreement is untenable. Section 2.2(b) of the Stockholders Agreement states that: "Stockholders *shall vote their Shares* … to cause the size of the Company's initial Board of Directors ("the Board") to be set at nine (9) directors and to elect the following directors to the Board: (i) five (5) directors nominated by the Investor [i.e., BPI]; (ii) the Founder [i.e., Baker] or his designee; (iii) three (3) outside directors nominated by the Founder in consultation with the Investor and approved by the Investor." (See Lugo Decl. Ex. A § 2.2(b) (emphasis added).) This provision clearly states that the obligation imposed upon Stockholders (which includes BPI) is to vote for approved nominees proposed by Baker. While BPI has discretion in the selection and approval of those three nominees, it also is required to act

- 13 -

reasonably. In breach of their agreement, BPI is alleged to have unreasonably refused to consider or vote for Baker's nominees, and instead, install the six directors that BPI had selected. (Am. Compl. ¶ 48.) Plaintiffs have alleged sufficient facts to demonstrate a "plausible" breach of contract claim under Twombly and its progeny.

### 2. Damages

BPI next argues that Plaintiffs have failed to allege any damages resulting from its alleged breach of the Stockholder Agreement. (BPI Mot. at 24.) Again, the Court disagrees. Plaintiffs allege that BPI's manipulation of the Board's composition vitiated his contractually-mandated protections and also contributed to his financial losses. (Am. Compl. ¶ 107.) Such allegations have been found to constitute a cognizable injury. See Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 114 (2d Cir. 2003) (loss of minority participation in corporate management resulted in injury to plaintiffs); High River Limited Partnership v. Mylan Laboratories, Inc., 383 F. Supp. 2d 660, 664 (M.D. Pa. 2005) (interference with right to nominate directors constituted a cognizable injury). In its Reply, BPI claims that Baker has not been injured because he still "continue[s] to be heard" by the Board. (BPI Reply at 14.) That, of course, is disputed by Plaintiffs. Since this matter is before the Court on a Rule 12(b)(6) motion, the Court must accept Plaintiffs' allegations as true and construe them in a light most favorable to them. Lazy Y Ranch Ltd., 546 F.3d at 588. Under that standard, the Court finds that Plaintiffs' allegations regarding damages are sufficiently pled.

### 3. Waiver

Finally, BPI contends that Plaintiffs waived their contract claim by waiting four months following the election of the Board on December 8, 2008 before filing this lawsuit. (BPI Mot. at 24-25.) A complaint cannot be dismissed based on an affirmative defense, such as acquiescence or waiver, unless the defense appears clearly from the face of the pleading. McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990); see also Fed.R.Civ.P. 8(c)(1) (listing "waiver" as an affirmative defense). Waiver and acquiescence require fact-intensive inquiries generally unsuited for resolution on a motion to dismiss. ACE & Co., Inc. v. Balfour Beatty PLC, 148 F. Supp.2d 418, 426 (D. Del. 2001). In this case, other than pointing out the four month gap between

the Board election and the filing of this suit, BPI fails to present any cogent argument establishing that Plaintiffs' acquiescence can be determined from the pleadings.  Moreover, BPI fails to cite any cases where a court, under circumstances analogous to those presented, dismissed a contract claim on this ground.  The Court finds that the issue of Plaintiffs' alleged acquiescence cannot be resolved at the pleading stage of this case.

## IV.    CONCLUSION

The Court concludes that Plaintiffs lack standing to bring direct claims for breach of fiduciary duty, minority shareholder oppression or violation of the UCL.  The Court therefore lacks subject matter jurisdiction to consider those claims.  However, Plaintiffs' allegations in support of their breach of contract claim against BPI are sufficient to state a claim.  Accordingly,

IT IS HEREBY ORDERED THAT Defendants' Motions to Dismiss are GRANTED as to Plaintiffs' first claim for breach of fiduciary duty, second claim for minority shareholder oppression and third claim for violation of California's UCL.  BPI's motion to dismiss Plaintiffs' fourth claim for breach of contract is DENIED.  This Order terminates Docket Nos. 116, 117 and 118.

IT IS FURTHER ORDERED THAT the parties shall appear for a Case Management Conference on *September 9, 2009 at 3:30 p.m.*  The parties shall *meet and confer* prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: July 31, 2009              _____
                                  Hon. Saundra Brown Armstrong
                                  United States District Judge